UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

-against-

FREDERICK E. JACKSON, a/k/a
FREDERICK ROWE,

Defendant.

---

ORDER

02 Cr. 756 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

Defendant Frederick E. Jackson, a/k/a Frederick Rowe (hereinafter "Jackson"), has filed a pro se motion for compassionate release. (Def. Mot. (filed under seal))  For the reasons stated below, Jackson's application will be denied.

I.     BACKGROUND

Jackson "led a drug organization that distributed crack cocaine in the Bronx from 1996 until his arrest in mid-2002." United States v. Jackson, 658 F.3d 145, 148 (2d Cir. 2011); see id. (discussing evidence at trial).  Jackson was charged with

> (1) conspiracy to possess and distribute 50 or more grams of crack cocaine, in violation of 21 U.S.C. §§ 812, 841(a)(1), 841(b)(1)(A), and 846; (2) possession and use of a firearm in the course of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(iii) and 924(c)(2); (3) causing a death by use of a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. §§ 924(j)(1) and 2; (4) murder committed in the course of the drug conspiracy in violation of 21 U.S.C. § 848(e)(1)(A), and; (5) possession of ammunition by a convicted felon, in violation of 18 U.S.C. § 922(g)(1).

Id.

"[T]hree trials were required before verdicts were rendered on all of the counts." Id.[1]  However, after he was ultimately found guilty on all counts, Jackson was sentenced by

---

[1] After the first trial, which took place before Judge McKenna, Jackson "was found guilty of conspiracy to distribute more than 50 grams of crack cocaine under 21 U.S.C. § 846 and

Judge Jones "to 540 months of imprisonment for the § 924(j) offense of causing death by use of a firearm during and in relation to a drug trafficking crime."  Id. at 149.  That "count was merged with the lesser included offense of the use of a firearm in connection with drug trafficking crime (18 U.S.C. §924(c))."  Id. at 149.  Jackson was also "sentenced to 540 months for the § 848(e)(1)(A) offense of murder in course of drug conspiracy."  Id.  "The court provided that the sentences would be concurrent with one another and with the remainder of the sentence imposed after the first trial."  Id.

The Second Circuit affirmed the judgments of conviction on all counts.  Id. at 154.

Jackson – who is 48 years old – is currently incarcerated at FCI-Talladega.  (Apr. 4, 2021 Govt. Ltr. (Dkt. No. 589) at 2; Def. Motion (filed under seal) at 12)[2]  Jackson's projected release date is September 9, 2043.  (Apr. 4, 2021 Govt. Ltr. (Dkt. No. 589) at 2)

## II.    JACKSON'S COMPASSIONATE RELEASE APPLICATION

On December 2, 2020, Jackson applied to the warden of FCI-Talladega for compassionate release.  (Def. Motion (filed under seal) at 3, 9)  Jackson claims that his request was denied by the warden on January 14, 2021.  (Id. at 3, 9, 22 (Appendix A))

On or about March 15, 2021, Jackson filed a motion for compassionate release.

---

possession of ammunition by a felon under 18 U.S.C. § 922(g).  The jury failed to reach verdicts on the other counts," and Jackson "was sentenced principally to 384 months imprisonment on the drug conspiracy count and 120 months, concurrent, on the count charging possession of ammunition."  United States v. Jackson, 658 F.3d 145, 148 (2d Cir. 2011).  And in the third trial, which took place before Judge Jones, a jury found Jackson "guilty on all three of the remaining counts."  Id.

[2]  The page numbers referenced in this Order correspond to the page numbers designated by this District's Electronic Case Files ("ECF") system.  Page numbers of sealed material correspond to PDF pagination.

(See generally Def. Motion (filed under seal))[3] Jackson contends that he is entitled to compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i) because he suffers from hypertension, obesity, and high cholesterol – all of which put him at greater risk from the COVID-19 virus. (Id. at 4-5, 12-14; see id. at 13 (discussing "severe living conditions caused by Covid-19"))  He further contends that the Section 3553(a) factors favor his release.  (Id. at 15-19)

In an April 4, 2021 letter, the Government opposes Jackson's compassionate release motion.  (See generally Apr. 4, 2021 Govt. Ltr. (Dkt. No. 589))  The Government acknowledges that Jackson's obesity puts him at greater risk from the COVID-19 virus – and that this factor constitutes an "extraordinary and compelling reason" for his release – but argues that FCI-Talladega is successfully managing the risks associated with the COVID-19 pandemic, and that the Section 3553(a) factors do not justify a reduced sentence.  (Id. at 1, 5-10)

In a subsequent undated letter, Jackson states that he has refused to receive a COVID-19 vaccine.  (See May 24, 2021 Order (Dkt. No. 599) (discussing the receipt of Jackson's undated-letter, which the Court filed under seal))  The Court ordered the Government to submit a letter addressing the significance of Jackson's refusal to be inoculated with the COVID-19 vaccine.  (Id.)

In a June 1, 2021 letter, the Government addresses (1) current and historical information regarding COVID-19 infections and vaccinations among inmates and staff at FCI-Talladega; and (2) the significance of Jackson's refusal to be inoculated with the COVID-19 vaccine.  (See generally June 1, 2021 Govt. Ltr. (Dkt. No. 603))  At that time, the Government reported that there were no active COVID-19 cases among inmates and staff at FCI-Talladega,

---

[3] Because Jackson's motion contains detailed information concerning his medical condition, this Court filed his motion under seal.  (Id.)

and that 531 inmates had been vaccinated. (Id. at 1) The Government also retracted its prior concession that Jackson's obesity – which placed him at an increased risk of severe illness from COVID-19 – constituted an "extraordinary and compelling reason" justifying release, noting that Jackson had declined the vaccine, and had thus rejected the opportunity to mitigate the risks he faces from the COVID-19 virus. (Id. at 4 (collecting cases); see also id. ("Further, whether or not Jackson himself is vaccinated, the rate of vaccination amongst the inmate and staff population at Talladega significantly mitigates the risks posed by the pandemic. Accordingly, notwithstanding the risk factor he presented in the Deft. Mot., the defendant no longer presents any extraordinary and compelling reason justifying compassionate release."))

In a July 15, 2021 letter, a unit counselor at FCI-Talladega reports that Jackson has received a COVID-19 vaccine. (July 15, 2021 Unit Counselor Ltr. (Dkt. No. 612); see also July 22, 2021 Govt. Ltr. (Dkt. No. 611) at 3 (noting that Jackson has now received both doses of the COVID-19 vaccine and has suffered no apparent adverse reactions))[4]

---

[4] The Court has reviewed other submissions from Jackson as well as letters submitted by friends and family supporting his application. (See Mar. 22, 2021 C. Rowe Ltr. (Dkt. No. 590); Apr. 20, 2021 Def. Ltr. (Dkt. No. 598); Apr. 29, 2021 A. Mills Ltr. (Dkt. No. 594); May 3, 2021 C. Rowe Ltr. (Dkt. No. 595) (including attachments); May 4, 2021 B. Houston Ltr. (Dkt. No. 596); May 10, 2021 Def. Ltr. (Dkt. No. 600); May 18, 2021 Def. Ltr. (Dkt. No. 601) (pertaining to Jackson's Section 2255 motion); Def. Reply Motion to Void Judgment Under Fed. R. Civ. P. 60(b)(4) (Dkt. No. 604) (addressing in part Jackson's motion for compassionate release); June 21, 2021 Def. Ltr. (Dkt. No. 605) (asserting that medical records supplied by the Government were falsified).

The Court has also reviewed the Government's July 22, 2021 letter (incorrectly dated June 22, 2021) reporting that Jackson's medical records have not been falsified, that Jackson has received appropriate medical care at FCI-Talladega, and that Defendant has been inoculated against the COVID-19 virus. (July 22, 2021 Govt. Ltr. (Dkt. No. 611))

## DISCUSSION

I.  **LEGAL STANDARD**

The compassionate release statute – 18 U.S.C. § 3582(c)(1)(A)(i) – provides that a court may

> upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf . . . , [] reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction. . . .

18 U.S.C. § 3582(c)(1)(A)(i).

Pursuant to the statute, a defendant seeking compassionate release must "fully exhaust[] all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf," or "30 days [must have lapsed] from the receipt of such a request by the warden of the defendant's facility." Id.

Where a defendant has exhausted his administrative remedies, a court considering an application for compassionate release must weigh the factors set forth in 18 U.S.C. § 3553(a) and determine whether there are "extraordinary and compelling reasons [that] warrant . . . a [sentence] reduction." Id. "[T]he district court has broad discretion in evaluating a defendant's motion for compassionate release," United States v. Vargas, No. 88-CR-325 (VEC), 2020 WL 6886646, at *3 (S.D.N.Y. Nov. 24, 2020), and may "consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them. . . ." United States v. Brooker, 976 F.3d 228, 237 (2d Cir. 2020).

II.   ANALYSIS

A.   **"Extraordinary and Compelling Reasons"**

Although Jackson claims to suffer from hypertension, obesity, and high cholesterol – such that he is more vulnerable to serious illness from the COVID-19 virus (see Def. Motion (filed under seal) at 12) – he has now received both doses of the COVID-19 vaccine. (See July 15, 2021 Unit Counselor Ltr. (Dkt. No. 612); see also July 22, 2021 Govt. Ltr. (Dkt. No. 611))

Having received the Pfizer COVID-19 vaccine, "he now has significant protection against serious illness or death should he contract COVID-19." United States v. Diaz, No. 19-CR-65 (JMF), 2021 WL 2018217, at *1 (S.D.N.Y. May 20, 2021) (citation and quotation marks omitted); see id. ("Thus, whether the issue is considered in reference to the existence of 'extraordinary and compelling reasons' justifying relief under 18 U.S.C. § 3582(c)(1)(A), or to the sentencing factors set forth in 18 U.S.C. § 3553(a), the result is the same: [the defendant] fails to show that relief is warranted due to the risks of COVID-19."); see also United States v. Pabon, No. 17 Cr. 312 (JPC), 2021 WL 603269, at *3-*5 (S.D.N.Y. Feb. 16, 2021) (denying compassionate release motion where defendant suffered from obesity and asthma but had been fully vaccinated against the COVID-19 virus); United States v. Brown, No. 16-CR-436 (KMW), 2021 WL 1154207, at *3 (S.D.N.Y. Mar. 26, 2021) ("Because [the defendant] will soon be fully vaccinated, any risk that he may become severely ill from COVID-19 will be reduced significantly. . . . In light of the above, the Court finds that, with respect to the risks associated with COVID-19, [the defendant] has not demonstrated the existence of extraordinary and compelling reasons warranting release.").

Moreover, current conditions at FCI-Talladega do not warrant Defendant's

immediate release. As of September 13, 2021, 133 staff members and 662 inmates have been fully inoculated against COVID-19 at FCI Talladega; no inmates and only 9 staff have confirmed positive test results for COVID-19; there have been five inmate and no staff deaths from the virus; and 264 inmates and 56 staff have recovered from the virus. See Bureau of Prison, COVID-19 Coronavirus, https://www.bop.gov/coronavirus/ (last accessed September 13, 2021).

In sum, Jackson has not shown that there are "extraordinary and compelling reasons" that justify his release.

**B.**     **Section 3553(a) Factors**

Even if Jackson had shown that "extraordinary and compelling reasons" justify his release, the Section 3553(a) factors militate against granting him compassionate relief.

18 U.S.C. § 3553(a) directs a sentencing court to consider

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed—

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for—

(A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . .

(5) any pertinent policy statement—

7

> > (A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28) . . .
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

At Jackson's sentencings, both Judge McKenna and Judge Jones referenced the Jackson's horrific childhood. (See Jan. 5, 2007 Sentencing Tr. at 53:2-8 (noting that Jackson "had a much more difficult childhood probably than most of the people in this room . . . . [And while it was] true that he had caring family members . . . in the end[,] he was on the street drinking and taking drugs before he was grown up"); Aug. 20, 2008 Sentencing Tr. at 56:14, 58:2-3 (noting that "the abuse [Jackson had suffered] may well have been extraordinary," and that "[s]ome of the abuse could easily be characterized as torture"))

Judge Jones found, however, that Jackson "ran his own drug distribution operation in an area of the Bronx which he controlled. He ran it through acts of violence, both with respect to keeping his workers in line as well as with respect to intimidating his rivals." (Aug. 20, 2008 Sentencing Tr. at 56:24-25, 57:1-2) "More significantly, [Jackson] deliberately made the decision that he wanted Ilar Chester killed, who was a rival drug dealer. And he put in motion . . . that killing. He gave [someone else] the gun, he told him to do it. And he did everything he could to see that it happened. And it did happen." (Id. at 57:5-10; see also id. at 58:15-19 ("The problem for me is how much can even these circumstances in [Jackson's] background really mitigate in terms of his punishment the very serious crimes that he

8

committed?  There is no more serious crime . . . then intentional murder.  And that's what we have here."))

The Government sought the Guidelines sentence of life imprisonment.  (Id. at 42:4-6, 43:13 ("[T]he Court should impose [a life sentence]. . . . [T]he government [does] not seek a life sentence except in the most serious cases.  This is one of those cases. . . . The guidelines in this case provide for [a] life sentence."))  Although Judge Jones varied from the Guidelines range, she imposed what was in effect a life sentence:  540 months' imprisonment.  (Id. at 59:1-2, 61:1-25, 62:1-5, 63:9-12; see also Apr. 4, 2021 Govt. Ltr. (Dkt. No. 589) at 9)  Jackson has served less than half of the sentence imposed by Judge Jones.  (Apr. 4, 2021 Govt. Ltr (Dkt. No. 589) at 9)

Jackson contends that the Section 3553(a) factors weigh in his favor, citing his difficult childhood.  (Def. Motion (filed under seal) at 16)  Jackson admits that he "has not been a model inmate," but contends that "he has strived to better himself," noting that he "has earned his G.E.D., Forklift Certification, has taken numerous education and health classes," has worked, has made charitable donations, and has assisted fellow inmates in filing "institutional grievances."  (Id. at 17-18, 20)  "[I]nstead of clashing with . . . gangs . . . [, he now] embraces them, in an attempt to change their outlook on life as he has done so himself."  (Id. at 19)  Jackson also notes that he "has served two decades of his sentence . . . while the individual convicted of actually pulling the trigger has had more than a decade of freedom, and an opportunity to support his family.  Which is actually a disparity amongst defendants."  (Id. at 16)

As discussed above, it is clear from the sentencing transcripts that both Judge McKenna and Judge Jones carefully considered the Section 3553(a) factors in sentencing Jackson.  (See Jan. 5, 2007 Sentencing Tr. at 51-57; Aug. 20, 2008 Sentencing Tr. at 56-58)  As

9

to the nature of Jackon's offenses, Jackson controlled a large drug distribution operation for six years, used acts of violence to effect that control, and ordered that a rival drug dealer be murdered. (See Aug. 20, 2008 Sentencing Tr. at 56:23-25, 57:1-4; Jackson, 658 F.3d at 148). Given Jackson's role in these offenses, the Court sees no improper disparity vis a vis his co-defendants. That the Defendant has made productive use of his time while incarcerated does not alter the extremely grave nature of his criminal conduct.

Having considered all of the Section 3553(a) factors, including Jackson's leadership role in the affairs of a violent drug distribution operation, his responsibility for an intentional murder, and the need for both specific and general deterrence, the Court concludes that the Section 3553(a) factors militate against his application for compassionate release.

## CONCLUSION

For the reasons stated above, Defendant's application for compassionate release pursuant to 18 U.S.C § 3582(c)(1)(A)(i) is denied. The Clerk of Court is directed to mail a copy of this order to Defendant. The Clerk of Court is directed to terminate Dkt. No. 603 and Dkt. No. 611.

Dated: New York, New York
       September 13, 2021

SO ORDERED.

Paul G. Gardephe
United States District Judge